Wright, J.,
delivered the opinion of the Court.
The action in this case is founded upon a bill of exchange in the following words and figures:
“ Exchange for 3000. Memphis, Marcli 19, 1860.”
“ Six months after date of this first of exchange, “(second unpaid,) pay to the order of Sam. P. Walker, “ three thousand value received, and charge the
‘ same to the account of (acceptance waived)
CORRY & CO.
“To H. W. Conner & Son,
“ Nero Orleans, La
Endorsed
Sam. P. Walker.
Thé second ' of the set is in the same form, omitting also the word ‘dollars’ after the words three thousand. Williamson, the endorsee and holder of this bill,' sues Smith, one of the drawers, and Walker, the endorser, *3 describing it in the declaration, as a bill for the payment of three thousand dollars. The defendants crave oyer of the bill, and set it out in haec verba, and demur to the declaration, and for cause of demurrer say that the declaration does not truly describe the bill of exchange, nor is the same valid or of any legal obligation, because of the omission of the word “dollars” as above shown. The demurrer was sustained by the Oireuit Judge, and judgment given that the defendant go hence, &c.
This, we think, is erroneous. The legal effect of this writing, is a bill of exchange for three thousand dollars, and it was -proper so to describe it in the declaration. In Story, on promissory notes, Sec. 12, (5th edition,) it is stated that a paper, with the following words ' and letters, but omitting the word dollars,, has been held to be a good note, viz: “$300, for value received, I promise to pay H. & Co., three hundred” — Citing Sweetzer v. French, 13 Metc. Rep., 262; and Coolbroth v. Purinton, 29 Maine, 469. In Kinconner v. Corrll, 9 Yer., 11-15, it is held, that where a word is omitted in the condition of a bond, without which, the condition is insensible, if it appear from other parts of the bond, what the meaning of the parties was, the Court will supply, or add the word to the condition. The authority cited in support of the opinion, is the case of Coles v. Hulme, 15 Com. Law Rep., 295, where a suit was brought upon a penal bond, the penalty being described as “seven thousand seven hundred” without any species of money being mentioned. It however, appeared from the recitals in the condition, that various sums expressed in pounds, were agreed to be paid, *4 and hence it was apparent that the parties intended to express the penalty also in pounds, and therefore, the Court said that in furtherance of the intention of the parties, the word pounds might be supplied.
The judgment must be reversed, and judgment pronounced here, that Williamson recover bis damages; to ascertain which, the case will be remanded to the Circuit Court, where a jury will be empanneled to assess the' same. The damages to be assessed will, of course, embrace whatever sum may be found due upon the bill of exchange, with interest, damages and cost of protest.
We have been asked to reconsider the opinion delivered in this case, and have done so upon the authorities furnished by the Counsel of defendants, and such other books as we have had within our reach. In the opinion, it had escaped our attention, that the usual prefix of the dollar mark to the figures 3000, in the margin of the bill of exchange was omitted, an exact copy of the bill, is this:
“Exchange 3000, Memphis, March 19, 1860. “Six “months after date of this first of exchange, (second “ unpaidj pay to the order of Sam. P. Walker, three “ thousand, value received, and charge same to account “ of (acceptance waived.)’’
CORRY & CO.
“To H. W. CONNER & Son,

“New Orleans, La,”

Endorsed,
Sam’l. P. Walker.
The second, or duplicate of the bill, is a literal copy of the first, with the variation of the words “ second unpaid” and “first unpaid” iii the body, and the figures *5 one and two in brackets in the margin, to denote that one is the first, and the other is the second of the bill of exchange.
The question now is, whether the legal aspect of this writing. is to create a valid bill, and whether, if such an instrument be drawn, endorsed, and put in circulation for value, any recovery can be had upon it against the parties thereto by the holders. Can the Court supply the omission of the word ‘''dollars” at the end of the words ‘‘three thousand”? We have not been able to find a case precisely parallel with this. The nearest authority to it, perhaps, is Elliot’s case, in 2 East’s Crown Law, 951. An indictment for the forgery of a promissory note upon the Bank of England, in which it appeared that in the body of the note, the promise was only to pay the sum of “fifty,” the word “pounds” not being added in writing, as is usually done in such notes, as have not the word pounds on-graved therein, being calculated for the insertion of broken sums, but at the bottom of the note there was engraven <£50. It also appeared upon the face of the note, that it was made in London, and payable .generally, on demand. Among other defenses, it was insisted that it was not a note for fifty pounds, as the word pounds was not inserted. The conviction was held proper, and the major part of the Court inclined to think that the omission of pounds in the body of the note, had nothing else appeared, would not have exculpated the prisoner; but it was matter to be left to the jury (as was done in this case) whether it purports to be a note for ¿£50, or any other sum, but all agreed that the ¿£50 in the margin removed every doubt, and showed that the *6 fifty in the body of the note was intended for pounds. Phipps v. Turner, 5 C. and P., 488, cited in Byles on Bills, (61 Law Lib. 100 top,) is also a strong case. A bill for “twenty-five, seventeen shillings and three," is a bill ¿625 17s. 3d. It appears to us, however, that a correct conclusion may be reached from general principles, applicable to the case laid down in the authorities. If the figures 3000, in the margin of the writing had the prefix of the dollar mark customarily rased in the United States, then the ease put in Story on promissory notes, which is supported by numerous decisions, would be decisive. It is laid down' as a role, that bills and notes should express the same for which they are given in the body of the instrument, but it is conceded that this omission will not he fatal, or render the bill or note invalid, if the true amount can be gathered from other parts of the writing. The case in Story is an example.
The custom is, to superscribe bills and notes with the sum in figures, for which, they are made payable. The object of this is, to render the amount certain, and prevent any mistake in the drawing of the instrument. Where there is a defect in the body of the note or bill, the amount mentioned in the margin may be referred to, in order to remove any ambiguity in the language used. And where the amount is left in blank in the body of the instrument, it is held that the bolder may fill it up with the amount stated in the margin. If there be a discrepancy between the amount stated in the margin, and that mentioned in the body of the instrument, the latter prevails ; because the former is only a memorandum, while the words used in the body of the contract, are a part of tbe note. In some of the authorities, it is *7 a prima facie rule, that the body of the note is to govern ; but that it may be shown that the amount stated in the margin is correct, according to the intention of the parties; and this being done, will justify, or at least excuse an alteration to that effect; for that, clearly enough, such an alteration making the note conform to the agreement, will not vitiate the instrument, though the general rule undoubtedly is, that every material alteration of such a paper destroys its validity. The true rule, however, would seem to be, that parol evidence is inadmissible to establish that the sum intended was not that stated in words in the body of the instrument, but was that stated in figures in the margin; Edwards on Bills and Promissory Notes, 152-158; Chitty on Bills, (11th Am., from 9th London ed.,) 149-159 Byles on Bills, (C. Law Lib.) 99-100 top page; Story on Bills, Sec. 42. But it has been held, that 'an instrument, in the form of a note, given for a blank sum, though superscribed for the correct amount, and transferred in that condition, is not a promissory note, and cannot be declared or recovered on in that shape as a promissory note; though the holder, if it has been made and endorsed, and delivered to him in that imperfect condition, for value, has a right to fill it up and make it what it was intended to be; Edwards, 153-158.
But, however this may be, that was an attempt — not to remove an ambiguity in the body of the instrument by means of the memorandum in the margin — but to supply a blarilc. If the sum in the body of the instrument be uncertain or ambiguous, or being given, the species of money, whether dollars cents or pounds, &c., be, by oversight, left out, the authorities agree that this omission, *8 in furtherance of the intention of the parties, will be supplied by the Courts, if there bo enough in the margin, or other portions of the writing, to enable them to see what was meant.
And this is especially so against the party making or negotiating it as to whom (if possible) effect is to be given to it; Chitty on Bills, (8 th Am., from 8 th London edition) 150. In such a case, the instrument in law, is a valid note or bill, and may be so declared on, and a recovery had. In a case of our own, (Wood v. Goodrich, 9 Yer., 266, a suit upon a bond) the Court say: when in a sealed instrument a word is omitted, without which the sense becomes incomplete, and when, also, the instrument in its recitals, or otherwise, obviously supplies the meaning of what was omitted, a Court of law will construe such instrument, and give effect to it, as if the word omitted had been inserted, and as the sense and obvious moaning of the instrument require.
Now, the very nature and character of the instrument in question, as exhibited on its face, (from reading it) demonstrate that it was intended by the parties to be a bill of exchange, which can only be for the payment of money. What other possible construction can be given to the transaction ? The issuance and circulation of this paper, in any other view, would be absurd and unmeaning. The words and form employed, show what was meant, and among lawyers, and commercial men, but one answer can be given. The sum is not left blank, either in the body of the instrument, or in the margin, nor do they disagree; but the omission consists in the kind or species of money in which the bill was payable, resulting, no doubt, from a mistake in the draftsman. This omis *9 sion, wo think, may be supplied by the Court, from what appears in the writing itself. The three thousand in the body of the instrument, and in the margin, could not have been meant for so many cents, such form of expression not being usual, perhaps never employed for any such purpose. They must have been intended, either for so many dollars, or for so much of the currency of some foreign government. The bill in question, upon its face, shows that it was drawn at Memphis, upon parties at New Orleans, La., where it was payable, places which the Court will take judicial notice, are within the United States: 1 Greenleaf’s Ev., Secs. 5, 6. This may be looked to in the interpretation of the contract to ascertain what was meant. Where the currency, in which a bill or note is to be paid is not mentioned, the currency of the country in which it is to be paid, is presumed by the law: Story on Bills, Secs. 42-44. There are certain general rules of interpretation recognized by all nations, which, form the basis of all reasoning on the subject of contracts. The object is to ascertain the real intentions of the parties in their stipulations; and when the latter are silent or ambiguous, to ascertain what is the true sense of the words used, and what ought to be implied, in order to give them their true and full effect. The primary rule in all expositions of this sort, is, that of common sense, words used in contracts may have different meanings attached to them in different places, by law or usage; and if they, in themselves, be obscure or ambiguous, custom and usage in a particular place, may give them an exact and appropriate meaning. Hence, if the full and entire intention of the parties does not appear from the words of the contract, and if it can be inter *10 preted by any custom or usage of the place where it is made, that course is to be adopted : Story on Promissory Notes, Sec. 161. A note made in England for one hundred pounds, would mean one hundred pounds sterling; a like note made in America would mean one hundred pounds in American currency, which is one-fourth less in value : Story on Promissory Notes, Sec. 162. And the word sterling has been held to mean sterling in that part of the kingdom where the bill is payable : Taylor v. Booth, 1 C. L., page 286, cited in Byles on Bills, (61 Law. Lib.) 100 top page.
The like interpretation would bo applied to the case of a promissory note, drawn in our country, and payable in another country, where the same denomination or currency existed in both countries, but represented different values. Thus, for example, a note drawn in Boston for one hundred pounds, payable in London, would be construed to be for one hundred pounds sterling; whereas, if a note drawn were drawn for the same sum in London, and payable in Boston, it would be construed to mean one hundred pounds of the lawful currency of Massachusetts, which, as we have just seen, is one quarter less in value. In each case, the ground of interpretation is the presumed intention of the parties, derived from the nature and objects of the instrument: Story on Promissory notes, Sec. 163.
"We feel constrained, therefore, to adhere to our opinion, holding this a valid bill of exchange, and that the judgment of the Circuit Court must be reversed, and the demurrer overruled.
The remaining question is the judgment to be pronounced by this Court. At common law in the Circuit *11 Court the judgment for the plaintiff on demurrer to a plea, (or replication in abatement,) was not final, but only a respondías ouster. In other cases, it was interlocutory or final, according to the nature of the action. If the action was for damages in assumpsit, &e., it was interlocutory, and the damages were to be assessed on a writ of enquiry; but.in debt, &c., for a sum certain, the judgment, was final, and the plaintiff might immediately talce out execution. And on the execution of writ of enquiry, after judgment on demurrer, it was not competent to the defendant to controvert anything but the amount of the sum in demand. 2 Tidd, 8 Par., (1st Am. from the Lon. Ed.,) 687, and 1 Bos. & Pul., 368, cited in note 9. But the judgment might, we apprehend, have been set aside, and the defendant, by way of amendment, allowed to put in a plea upon affidavit of its truth. But now, by the Code,, 2936, the party against whom a judgment or demurrer is rendered, may plead over as a matter of right, without waiving his privilege of assigning the judgment on demurrer as error in an Appellate Court, unless he has subsequently had the benefit secured by the demurrer upon the trial of other equivalent issues. It would seem, therefore, that the same judgment ought to be rendered against him, as would be upon overruling a plea in abatement; that is respondeat ouster, that he answer or plead. If he fails to plead over, a Avrit of enquiry, if necessary to ascertain the damages, will issue immediately, arid be executed the same term; Code, 2937. If, in the opinion of the Court, a demurrer is interposed without cause, terms may be imposed, not exceeding the cost of the action; Code, 2938; History of a Lawsuit, 112, 113, 114. And this Court, (Code, 316,) if the judgment or the decree *12 of the inferior Court is reversed, is required to give such judgment or make such decree as should have been rendered in the inferior Court, and shall issue execution without a procedendo, except where the damages to be assessed are uncertain, in which case the case must be remanded for further proceedings. This section governs the case. The damages here are uncertain, and are understood, notwithstanding the cause is in this Court, that the party may yet, as a matter of right, plead over to the merits, and that he is not concluded by the demurrer. What judgment we should render if the damages to be assessed were not uncertain, and the amount of the plaintiff’s claims could be ascertained by simple calculations from the papers, we need not now decide.
Judgment must be rendered in conformity to this opinion, and the cause remanded for further proceedings.